IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| UNITED STATES CURRENCY IN THE | ) | |
| AMOUNT OF $30,042.00 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, United States of America, by its attorneys, Tammy Dickinson, United States Attorney for the Western District of Missouri, and James Curt Bohling, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881(a)(6).

**THE DEFENDANT IN REM**

2. The defendant $30,042.00 in United States currency was seized from Kevin R. McLouth and Kallie McLouth on January 30 2013, during a traffic stop on Interstate 70 and Missouri State Highway B near Boonville, Missouri, in Cooper County. It is presently in the custody of the Missouri State Highway Patrol, however, an Order of Transfer has been issued by the Circuit Court of Cooper County, Missouri, and the defendant $30,042.00 will soon be

1

transferred to the Drug Enforcement Administration (DEA).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. § 881(a)(6).

4. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the defendant is found in this district; and pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 18 U.S.C. § 981(h) and/or 21 U.S.C. § 881(j), because a criminal prosecution of the owner of the property has been brought in this district.

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district; pursuant to 28 U.S.C. § 1355(b)(2); pursuant to 18 U.S.C. § 981(h) and/or 21 U.S.C. § 881(j), because a criminal prosecution of the owner of the property has been brought in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; or 3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

# FACTS

7.	In 2007, DEA St. Louis, Alcohol Tobacco & Firearms (ATF), St. Louis, the Missouri State Highway Patrol (MSHP), and the East Central Drug Task Force (ECDTF), initiated an investigation on the Travis MCDONALD Drug Trafficking Organization (MCDONALD DTO) which is based in Vandalia, Missouri.  As a result of the investigation, law enforcement has determined via physical surveillance and information provided by CS's, CI's, SOI's, Cooperating Defendants and T-III intercepts that the MCDONALD DTO distributes Cocaine, Methamphetamine and Marijuana throughout the Northeastern Missouri area.  The investigation has flourished and a number of co-conspirators have been identified in the Vandalia and Columbia, Missouri, area.  After intercepts of MCDONALD DTO members to include Travis and Cody MCDONALD, investigators have determined the cocaine supplier for the MCDONALD DTO was Russell Dale GAY.  Intercepts of GAY determined GAY receives marijuana and cocaine from Kevin MCLOUTH, who is a member of the Jose Guadalupe MACIAS DTO.

## Arrest of Jennifer MCCARTY

8.	On June 22, 2011, Jennifer MCCARTY was arrested at the U.S. Border Patrol (USBP) checkpoint in Sarita, Texas, while driving a van containing 27 bundles of marijuana concealed in the gas tank of the vehicle.  After her arrest, MCCARTY told agents that she had traveled to McAllen, Texas, to meet Dena MACIAS Yanez and Kevin MCLOUTH. MCCARTY stated that she meet with MACIAS Yanez and MCLOUTH, who took possession of the van and told MCCARTY they were taking the van "to be serviced."  MCCARTY stated MACIAS Yanez and MCLOUTH later returned with the van.  MCCARTY stated MACIAS

3

Yanez instructed her to drive the van to Columbia, Missouri, where she was to again meet MACIAS Yanez and MACIAS Yenaz would take the van to "be serviced again." MCCARTY stated MACIAS Yanez gave her $1,000 for traveling expenses. MCCARTY stated she then departed the area. MCCARTY said she noticed "something was wrong with the van" after getting fuel and called MACIAS Yenaz since the gas tank would not hold very much fuel. MCCARTY said that MACIAS Yanez told her the gas tank may be full. MCCARTY was subsequently arrested at the USBP checkpoint. MCCARTY cooperated with law enforcement in exchange for consideration at sentencing. The information provided by MCCARTY has been corroborated with information provided by other cooperating individuals and is deemed reliable.

### Seizure of 90 pounds of marijuana from MCLOUTH's storage locker in Columbia, Missouri.

9. On November 20, 2011, the Columbia, Missouri, Police Department (CPD) dispatched officers to Triple L Mini Storage located at 6101 Paris Road after receiving a call from an individual who reported seeing two male subjects with bolt cutters coming out of unit 1120. Upon arrival, officers noticed there was no lock on unit 1120 and that the overhead door was partially open. Officers raised the overhead door to insure that no one was inside and immediately observed several black rectangular packages on the floor consistent with the packaging of narcotics. As a result, 90 packages, with a gross weight of approximately 90 pounds of marijuana, were recovered from the unit.

10. According to Triple L Mini Storage records, unit 1120 was originally rented to Dena Jo MCLOUTH from May 2011 until November 2011. On November 1, 2011, Dena MCLOUTH changed the renter to Kevin Ray MCLOUTH.

**Proffer of Wilson Hugo CHAVEZ**

11.     On January 9, 2012, investigators conducted a proffer interview of Wilson HUGO Chavez.   HUGO Chavez was indicted in the District of Kansas for Conspiracy to Distribute Methamphetamine and received a sentence of 198 months in federal prison.   During the proffer interview, HUGO Chavez told investigators he sold cocaine and marijuana to a female, known to HUGO Chavez as "Dana," and her husband, who was known to HUGO Chavez as "Lupe," from Columbia, Missouri.   HUGO Chavez identified a photograph of Dena Jo MACIAS Yanez as the individual he knew as "Dana" and identified a photograph of Jose Guadalupe MACIAS Yanez (hereinafter referred to as JOSE) as the individual known to HUGO Chavez as "Lupe."   HUGO Chavez stated MACIAS Yanez, JOSE, and MACIAS Yanez' brother traveled to CHAVEZ' address to obtain cocaine and marijuana.   HUGO Chavez identified a photograph of Kevin MCLOUTH as the individual known to him as MACIAS Yanez' brother.   HUGO Chavez also stated MCLOUTH's daughter was also present during the drug transactions.   HUGO Chavez stated he sold JOSE and MACIAS Yanez 50 to 100 pounds of marijuana on three to four occasions.   The quantity of cocaine sold to JOSE and MACIAS Yanez was not discussed.

**T-III INTERCEPTS**

12.     On December 12, 2012, the United States District Court for the Western District of Missouri issued an order in Case No. 12-WT-03-C-BCW, authorizing the interception of wire and electronic communications to and from a prepaid cellular telephone number utilized by McLOUTH.   The authorized interception was extended for an additional thirty day period by Judge Wimes on January 10, 2013.

5

13. Below are summaries of intercepted phone calls from Case No. 12-WT-03-BCW based upon my review of logs made by monitors and my discussion with the monitors and other investigators assigned to this case. The communications that have been intercepted demonstrate that the identified conspirators engaged in violations as mentioned above.

14. At approximately 9:57 a.m. on December 17, 2012, McLOUTH made a call to JOSÉ. JOSÉ answered the call, and McLOUTH asked, "Hey uh have you heard anything from our buddy?" JOSÉ replied, "Uh no." McLOUTH continued, "So it ain't happening today?" JOSÉ answered, "I don't know so was getting ready to text him when I'm done with this." McLOUTH requested, "Well text something because KALLIE's needing to make a doctor's appointment. She's trying to fucking figure out the schedule." JOSÉ replied, "Okay." McLOUTH continued, "And see if it's happening today or tomorrow maybe. He said . . . because he said the other day, he said, 'I'll see ya Monday,' so." JOSÉ said, "Okay." McLOUTH concluded, "When I talked to him." JOSÉ said, "Okay." McLOUTH ended, "So just let me know something, if you can." It is believed that McLOUTH and JOSÉ were discussing JOSÉ obtaining drugs from an unidentified source of supply. It is also believed that McLOUTH was trying to confirm when he and KALLIE would need to go to Kansas City to pick up the cocaine, so that KALLIE could schedule a doctor's appointment.

15. At approximately 11:08 a.m. on December 17, 2012, McLOUTH called JOSE. JOSÉ answered the call, and McLOUTH said, "Hey Boss." JOSÉ said, "Yeah." McLOUTH asked, "Hey you ain't heard nothing yet?" and JOSÉ continued, "Nah I just text him. He hasn't texted me back." McLOUTH said, "Alright well if you do make sure you give me a call. Let me know something." JOSÉ replied, "Oh yeah I will." It is believed that McLOUTH and JOSÉ

6

were again discussing JOSÉ obtaining drugs from his unidentified source of supply, and that JOSÉ was advising McLOUTH that JOSÉ was going to text his source of supply in an attempt to confirm when a shipment of drugs would be available.

16. At approximately 12:04 p.m. on December 17, 2012, McLOUTH called JOSE. JOSÉ answered the call, and McLOUTH asked, "What's up?" JOSÉ replied, "Hey, he finally text me and he said that uh that maybe happen later on today, but it's gonna be too late." McLOUTH asked, "So tomorrow maybe?" and JOSÉ said, "Yeah yeah." McLOUTH continued, "Just plan on tomorrow? Okay." Later McLOUTH stated, "If you get to talk to him again just try to figure out which one it is so I know if it." JOSÉ said, "Okay." McLOUTH said, "Alright. Her I don't mind you know. It's just an easy in and out you know. The other one is a little more you know." JOSÉ replied, "Yeah." McLOUTH stated, "I just like to know whether I can just do go through the motions or if I gotta kinda you know what I'm saying." JOSÉ replied, "Yeah." McLOUTH continued, "I'd just like to know for sure which one I'm getting so I have a clue so I have everything ready. You know what I'm saying." JOSÉ ended, "Yeah." It is believed that McLOUTH and JOSÉ were again discussing JOSÉ obtaining drugs from his unidentified source of supply, and that McLOUTH was attempting to determine from JOSÉ what type of drugs (cocaine and marijuana) and how much of each type JOSÉ expected to obtain so that McLOUTH could let his customers know when he would be able to fill their orders.

17. At approximately 9:00 a.m. on December 18, 2012, officers established surveillance of a mobile home park at 4130 Lenoir Street, Columbia, Missouri, which is a single wide mobile home, and observed McLOUTH walk from a gray Nissan Pathfinder, Missouri license FH4-M3K, and enter the trailer at 4130 Lenoir Street, #25, Columbia, Missouri. The

7

Nissan Pathfinder is registered to Kevin McLOUTH with a TOD to Kallie McLOUTH. At approximately 9:03 a.m., officers saw the Pathfinder exit the mobile home park and turn northbound onto Lenoir Street, then turn onto Highway 63 North. As the Pathfinder exited Highway 63 North to westbound Stadium Boulevard, excessive traffic caused the surveillance units to temporarily lose sight of the vehicle. A short time later, surveillance officers observed the Pathfinder arrive and park at D&S Automotive, 1404 Grand Avenue, Columbia, Missouri, which is a large green metal building. At approximately 9:22 a.m., officers observed several unknown males place a large container into the Pathfinder. McLOUTH then got into the Pathfinder and drove to a Break Time gas station at 301 Nebraska Avenue, Columbia, Missouri.

18. At approximately 9:45 a.m. on December 18, 2012, JOSÉ called McLOUTH. After McLOUTH answered the call, JOSÉ asked, "Hey, what's happening, man?" McLOUTH replied, "Same ole same ole." JOSÉ asked, "Hey, you got a whole one laying around?" McLOUTH said, "Yeah." JOSÉ continued, "Alright cool. I gotta run two places, collect money, and then I can meet up with you. Be about half an hour, forty five minutes." McLOUTH stated, "Alright. I should be still at work, so give me a call." JOSÉ asked, "You still be around the shop or?" and McLOUTH replied, "Yeah." JOSÉ said, "Alright, I'll give you a call as soon as I get done. Get that shit." McLOUTH ended, "That'll work."

19. At approximately 10:21 a.m. on December 18, 2012, JOSÉ called McLOUTH, after McLOUTH answered the call, JOSÉ instructed, "You better collect all the money you can." McLOUTH asked, "Okay, why? What's up?" and JOSÉ replied, "He's ready." McLOUTH said, "Okay. Well, I won't be able to get it today." JOSÉ responded, "Em k," and McLOUTH continued, "So I mean because . . . because uh I got uh a little bit of weed and I just sold another

8

zip. That's all I got dude. Besides all the money I gave you this morning." JOSÉ said, "Em k," and McLOUTH asked, "So what do you want me to do?" Want me to come over there and we get our money and we get ready to roll or what?" JOSÉ answered, "Yeah, yup." McLOUTH continued, "Okay. I didn't . . . I thought you, we was in trouble or something. . . . Okay. Let me call Q up and see if he wants anything before I leave town." Later McLOUTH asked, "Did you ask him what?" and JOSÉ replied, "Girl." McLOUTH stated, "Alright. Alright, cool. Alright, I'm gonna make a few calls, see if I can dump some shit and then uh, go on from there." JOSÉ said, "Okay." McLOUTH replied, "I'll be over alright," and JOSÉ ended, "Alright, bye." It is believed that McLOUTH informed JOSÉ that he still had some marijuana to sell, and that he just sold an ounce of cocaine ("I got uh a little bit of weed and I just sold another zip."). It is also believed that JOSÉ was advising McLOUTH to collect as much cash as possible, as their source of supply was ready to provide them with cocaine ("girl").

20. At approximately 11:26 a.m. on December 18, 2012, McLOUTH called JOSE and McLOUTH asked, "You got my money ready?" JOSÉ responded, "Yes sir I was ready, when they call me I started counting it putting everything together. That's why I call you." McLOUTH stated, "Alright well I'm gonna, I still gotta little bit with me. You want it or you want us to hold it back?" JOSÉ replied, "No no. Let's just put it back in there." McLOUTH queried, "Huh? We're gonna hold it back or what?" JOSÉ replied, "No let's send it." McLOUTH asked, "You want to send it all?" and JOSÉ ended, "Yes." It is believed that McLOUTH was inquiring whether JOSÉ had the money ready for McLOUTH to retrieve in order to drive to Kansas City to obtain more cocaine.

21. At approximately 11:45 a.m. on December 18, 2012, surveillance units observed

9

McLOUTH leave D&S Automotive located at 1404 Grand Ave., Columbia, Missouri in the Pathfinder, and turn onto South Lenoir Street.

22. At approximately 11:50 a.m. on December 18, 2012, McLOUTH called KALLIE and when KALLIE answered the call, McLOUTH asked, "Is the money ready?" and KALLIE said, "Yeah." McLOUTH stated, "Okay, I'm on my way over there." KALLIE replied, "Em k." McLOUTH continued, "So, and DENA's gonna be right on my ass, so I need to get in and get out, okay? So get everything ready." KALLIE said, "Alright." McLOUTH continued, "Tell him I don't know about this money I got on me. How much is his or whatever. It's not much so but I gotta go and go and is what I'll do." KALLIE said, "Em k." McLOUTH closed, "Alright bye," and KALLIE ended, "Bye." It is believed that McLOUTH was about to leave to meet with JOSÉ's source of supply, and was asking his daughter, KALLIE, if the money had been counted and was ready to be picked up. McLOUTH informed KALLIE that DENA MACIAS Yenaz was also on her way to KALLIE's house, and that he did not want DENA to see any of the money or for KALLIE to let DENA know what was going on ("So, and DENA's gonna be right on my ass, so I need to get in and get out, okay? So get everything ready"). McLOUTH also asked KALLIE to tell JOSÉ that McLOUTH was unsure how much of the money he had recently collected was to be added to what KALLIE was preparing to give to JOSÉ's source of supply ("Tell him I don't know about this money I got on me. How much is his or whatever. It's not much so but I gotta go.")

23. At approximately 12:02 p.m. on December 18, 2012, surveillance units observed the Pathfinder eastbound on Missouri AC, then turn onto South Lenoir Street. At approximately 12:03 p.m., officers maintained surveillance of the Pathfinder as it returned to the mobile home park and parked at unit #25 at approximately 12:05 p.m. At approximately 12:17 p.m.,

10

surveillance units observed the Pathfinder, occupied by McLOUTH and KALLIE, as well as JOSE's black Chevrolet truck, leave the mobile home park and travel in tandem on South Lenoir Street to Missouri AC, and eventually onto the entrance ramp for westbound I-70. Officers maintained their surveillance of the Pathfinder as it traveled westbound on I-70. Surveillance of the black Chevrolet truck was terminated after it passed by the entrance ramp to westbound I-70.

24. At approximately 2:13 p.m., McLOUTH called JOSE and JOSÉ answered the call and McLOUTH commented, "Hey, I'm uh, fucking twenty-one miles away." JOSÉ said, "Alright." McLOUTH repeated, "Alright?" and JOSÉ verified, "Alright. McLOUTH stated, "I'm hitting some traffic so I gotta get off here," and JOSÉ said, "Alright." McLOUTH continued, "So hang in there and . . . and don't forget Juju." JOSÉ replied, "Oh, I know." McLOUTH said, "Alright," and JOSÉ ended, "Alright, bye." It is believed that McLOUTH was advising JOSÉ that he was getting close so that JOSÉ could make their source of supply aware that McLOUTH was approximately 20 minutes away from the meet location.

25. At approximately 2:38 p.m., JOSÉ called McLOUTH and JOSÉ asked, "You want me to call him?" McLOUTH said, "Huh?" and JOSÉ repeated, "You want me to call him?" McLOUTH said, "Do you want me to call him now? Do I wanna call him?" JOSÉ replied, "No no no. Do you want me to call him yet? Not yet?" McLOUTH stated, "Yeah dude. I fucking thought you was gonna call him when I was on twenty-one. Tell him I was twenty minutes away. I'm fucking one minute away from where we meet." JOSÉ said, "Alright." McLOUTH instructed, "Call me back. Let me know," and JOSÉ ended, Alright." It is believed that JOSÉ was asking if McLOUTH wanted JOSÉ to let their source of supply know that McLOUTH was approaching the meet location, and that McLOUTH was upset with JOSÉ, who was supposed to

11

notify their source after the previous call.

26. Surveillance units observed the Pathfinder turn onto Highway 670 in Kansas City, Kansas. At approximately 2:45 p.m., officers watched the Pathfinder exit Highway 670 and travel northbound on 18th Street, then enter Prescott Plaza at 151 South 18th Street, Kansas City, Kansas. Investigators maintained surveillance as the Pathfinder parked in front of a gas station, then watched McLOUTH and KALLIE enter the gas station. A short time later, officers observed McLOUTH and KALLIE exit the gas station and re-enter the Pathfinder. Investigators observed the Pathfinder conduct what appeared to be counter surveillance maneuvers by circling the block and then return to the gas station parking lot. Surveillance units observed a brown SUV bearing an unknown Kansas plate park next to the Pathfinder: the occupant of the SUV appeared to be meeting with McLOUTH. A short time later, officers watched the Pathfinder travel back to eastbound I-70. Because of technical problems, surveillance units were not able to follow McLOUTH, and surveillance was discontinued.

27. At approximately 9:39 a.m. on December 19, 2012, McLOUTH called JOSÉ and McLOUTH said, "Hey what's up?" JOSÉ replied, "What's up?" McLOUTH responded, "Hey I got rid of all my girls man." JOSÉ asked, "You got what?" McLOUTH repeated, "I got rid of all my girlfriends." JOSÉ stated, "Oh okay, so I guess you're going to have to make some more, ain't you?" McLOUTH said, "Yup, you'll have to introduce me to some new ones." JOSÉ replied, "Okay." McLOUTH continued, "I ain't got nothing on uh, you know the, the ready, so if you want to do it later on today that's cool. If you want to early or so, I'm just letting you know so." JOSÉ answered, "Alright," and McLOUTH ended, "Alright." It is believed that McLOUTH had distributed all of his cocaine ("I got rid of all my girlfriends") and needs JOSÉ to

12

provide him with more cocaine ("Yup, you'll have to introduce me to some new ones.")

28.     On January 30, 2013, at approximately 8:43 a.m., McLOUTH received an incoming call.   During this call investigators interpreted the call as MACIAS directing McLOUTH to travel to Kansas City, Kansas, and obtain cocaine.

29.     At approximately 9:56 a.m., McLOUTH received a call from Brian BERRY.   During this call MCLOUTH advised BERRY that he (McLOUTH) would have cocaine the following morning.

30.     At approximately 11:01 a.m., McLOUTH received an incoming call from Russell GAY using telephone number (573) 514-2438.    During this conversation, McLOUTH advised, he was traveling to Kansas to obtain cocaine.

31.     At approximately 11:09 a.m., McLOUTH made an outgoing call to JOSE.   During this call McLOUTH advised he was 15 minutes away and asked JOSE to confirm the meeting location.   At approximately 11:10 a.m., McLOUTH called JOSE and inquired if he was only picking up cocaine.   JOSE advised it was only cocaine that would be provided to McLOUTH.

32.     At approximately 11:22 a.m., investigators observed McLOUTH traveling westbound on Interstate 70 at the junction of Interstate 435 in his Grey 2001 Nissan Pathfinder bearing Missouri Registration FH4 M3K.

33.     At approximately 11:31 a.m., investigators observed McLOUTH arrive in the area of 18th Street and I-70 Kansas City, Kansas.

34.     At approximately 11:31 a.m., JOSE called McLOUTH and advised McLOUTH that he (McLOUTH) was to meet the source of supply at a grocery store.   McLOUTH advised he was there and didn't see anyone.   At approximately 11:31 a.m., investigators observed a Brown

13

Lincoln Navigator arrive and park next to McLOUTH's vehicle. Investigators observed a Hispanic male exit the Navigator and enter the rear driver's side door of McLOUTH's vehicle. At approximately 11:35 a.m., SA Kline observed the Hispanic male exit MCLOUTH's vehicle and walk to the Navigator while holding the right side of his coat, and enter the driver's side of the Navigator. At approximately 11:36 a.m., SA Kline observed both vehicles leave the area. At approximately 11:40 a.m., SA Kline observed MCLOUTH's vehicle began traveling east bound on Interstate 70.

35. At approximately 12:15 p.m., SA Kline transferred surveillance of McLOUTH to St. Louis DEA Financial Investigations Group (FIG). FIG agents followed McLOUTH's vehicle to Cooper County (Missouri) where the vehicle was stopped by Missouri State Highway Patrol Sgt. Matt Morice (DSN 520) at approximately 1:18 p.m. on Interstate 70 and Missouri State Highway B near Boonville, Missouri. During the traffic stop Sgt. Morice obtained consent to search the vehicle from McLOUTH. Upon a search of the vehicle Sgt. Morice located $30,042.00 in United States currency (an official count was conducted by MSHP and the official amount was provided to SA Lawyer prior to his completing a DEA 6) from Kallie McCLOUTH's purse which was in the passenger side floor board of the vehicle. Sgt. Morice seized the United States currency and maintained custody of the United States currency pending a Missouri state court turnover order. Sgt. Morice then located appropriately one pound of marijuana in the rear cargo area of the vehicle. The vehicle was then towed to a nearby location in order to serve a previously obtained search warrant for McLOUTH's vehicle. At approximately 2:10 p.m., investigators executed the search warrant on the vehicle. During the execution of the search warrant Sgt. Morice deployed his canine Rocky, who alerted on the rear of the driver's seat. Sgt. Morice searched the seatback

14

and located four packages of suspected cocaine. Upon Sgt. Morice finding the packages, McLOUTH looked at Kallie McLOUTH and said, "Sorry." Sgt. Morice conducted a field test of one of the packages and the substance tested positive for the presence of cocaine. The total weight of the four packages was 2553 ggw. Investigators seized the four packages of suspected cocaine. Sgt. Morice and Sgt. McGinnis placed Kevin and Kallie McLOUTH under arrest for state Possession of a Controlled Substance and transported them to the Cooper County Sheriff's Office, where they were processed. On the same date, both Kevin and Kallie McLOUTH posted bail and were released.

36. On April 8, 2013, the Circuit Court of Cooper County, Missouri issued an Order of Transfer for $30,042.00 to be transferred to the custody of the United States Drug Enforcement Administration.

37. On October 2, 2013, a Federal Grand Jury in Jefferson City, Missouri, Western District of Missouri indicted Kevin McLOUTH and Jose Guadalupe MACIAS Yanez on one count of Conspiracy to distribute and possess with intent to distribute Marijuana/cocaine. Kevin McLOUTH was also indicted by the Grand Jury on one count of Conspiracy to distribute and possess with intent to distribute cocaine, two counts of Possess with Intent to Distribute Marijuana. Kevin McLOUTH, Jose Guadalupe MACIAS and Kallie McLOUTH were indicted on two counts of Use of a Communications Facility to Facilitate a drug trafficking Conspiracy.

## CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF

38. The Plaintiff repeats and incorporates by reference the paragraphs above.

15

39. By the foregoing and other acts, defendant $30,042.00 in United States currency constitutes moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

40. The Plaintiff repeats and incorporates by reference the paragraphs above.

41. By the foregoing and other acts, defendant $30,042.00 in United States currency constitutes proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CLAIM FOR RELIEF

42. The Plaintiff repeats and incorporates by reference the paragraphs above.

43. By the foregoing and other acts, defendant $30,042.00 in United States currency constitutes moneys, negotiable instruments, securities, or other things of value used or intended to be used to facilitate any violation of 21 U.S.C. § 801, *et seq.*, and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By:    */s/ James Curt Bohling*
James Curt Bohling, #54574
Chief, Monetary Penalties Unit
Assistant United States Attorney
400 E. 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
E-mail: mailto:curt.bohling@usdoj.gov

# VERIFICATION

I, Special Agent Ryan D. Lawyer, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Drug Enforcement Administration, that I have read the foregoing Verified Complaint in Rem and know the contents thereof, and that the factual matters contained in paragraphs seven through thirty-seven of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Dated  4/22/14                                         /s/ Ryan D. Lawyer
                                                       Ryan D. Lawyer
                                                       Special Agent
                                                       Drug Enforcement Administration